UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA A. GEDDLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4069 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the Court are a motion by Plaintiff Debra A. Geddling (hereinafter "Geddling") for summary reversal [Doc. #15] and a motion by Defendant Commissioner of Social Security (hereinafter "Commissioner") for summary affirmance [Doc. #19] of a final decision of the Commissioner which denied disability benefits to Geddling. The Court remands this case to the Commissioner for further proceedings to obtain an updated medical assessment of Geddling's residual functional capacity ("RFC") consistent with this Order.

**PROCEDURAL BACKGROUND**

Geddling, then 44 years old, first filed an application for disability insurance benefits and supplemental security income on January 2, 2002, alleging a disability onset date of December 28, 2001, due to a number of impairments including depression, agoraphobia, and panic attacks. Her application was denied initially and upon reconsideration by the Social Security Administration and the Administrative Law Judge ("ALJ") after a hearing during which Geddling was represented by counsel.

Geddling's appeal of the ALJ's decision to the Appeals Council was unsuccessful leaving the ALJ's decision as the final agency action. Geddling then brought the instant action for judicial review of the Commissioner's action in denying her disability benefits.

At the time of the hearing, the ALJ found that Geddling had the following impairments: status post back surgery involving L-2, L-3 with a history of post laminectomy syndrome and complaints of leg and low back pain, gastroesophageal reflux disease (GERD), hypertension, obesity, status post gall bladder surgery with complaints of subsequent abdominal pain, history of headaches, diabetes mellitus, history of heavy metal poisoning, depressive disorder not otherwise specified (NOS) with a history of major depressive disorder, anxiety disorder, fibromyalgia and a history of irritable bowel syndrome.

In denying Geddling's application, the ALJ determined that Geddling was not "disabled" as defined by the Social Security Act, as amended.  The ALJ found that her impairments when considered singly and in combination, although severe, did not medically meet or equal any of those listed in Appendix 1, Subpart P of Regulation No. 4 (Listing of Impairments).  Her mental impairments were found to have produced mild restriction of her activities of daily living, moderate difficulty in maintaining social function, moderate difficulties in maintaining concentration, persistence or pace, and she has experienced no episodes of decompensation. However, the effects of her mental impairment did not establish sufficient limitations to satisfy the "C" criteria.  The ALJ also found that, although Geddling was unable to perform her past

relevant work, she retained the RFC to perform the exertional and non-exertional requirements of work, with the following limitations:

> occasionally lift 20 pounds and repeatedly lift two pounds, extend/walk two hours in an eight hour day, sit six hours in an eight hour day, occasionally bend, stoop, squat, kneel, crawl, and climb.  The claimant should avoid heights.  She could perform simple, routine, repetitive tasks not requiring constant, close attention to detail and have occasional contact with the public. She could tolerate brief superficial interaction with others.  She would require occasional supervision and could work at no more than a regular pace.  She could tolerate mild to moderate stress.

Based upon the testimony of the vocational expert, the ALJ concluded that "when considering the claimant's age, education, previous work experience, and RFC, jobs still exist in significant numbers in the national economy that could be performed" by her, such as "addresser, final assembler and touch-up screener."

The issue before the Court is not whether the ALJ was correct in his decision but whether or not there is substantial evidence in the record to support the Commissioner's decision that Geddling did not establish an entitlement to disability benefits.

## APPLICABLE LAW

In order to be entitled to disability benefits under the Social Security Act, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits.  See 20 C.F.R. §§ 494.1566, 416.966 (1986).

The establishment of disability under the Social Security Act

3

is a two-step process.  First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42. U.S.C. § 1382(c)(a)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.  McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step sequential test.  See 20 C.F.R. §§ 404.1520, 416.920.

The five-step sequential test is examined by the ALJ in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or equal one on the list of specified impairments?  (20 C.F.R. Part 404, Subpart P, Appendix 1): (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is disabled.  Garfield v. Schwerkis, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burden of production and persuasion on steps 1 through 4.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the commissioner to show

an ability to engage in some other type of substantial gainful employment. <u>Tom v Heckler</u>, 779 F.2d 1250 (7th Cir. 1985); <u>Halvorsen v. Heckler</u>, 743 F.2d 1221 (7th Cir. 1984).

The rules in the grid set out in Appendix 2 of Subpart P of 20 C.F.R. § 404, are considered in determining whether a plaintiff with exertional impairments is or is not disabled. The regulations provide that if an individual suffers from a non-exertional impairment, both are considered in determining RFC. 20 C.F.R. §§ 404.1545, 416.945. If a finding of disability cannot be made based upon exertional limitations alone, the rules established in Appendix 2 are used as a framework in evaluating disability. In cases where the individual has solely a non-exertional impairment such as pain or mental impairment, a determination as to whether disability exists is based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in Appendix 2.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. <u>Delgado v. Bowen</u>, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Credibility determination made by the ALJ will not be disturbed

unless the finding is clearly erroneous. <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564 (1985).

In this case, the Commissioner decided that Geddling was not entitled to benefits because she was not "disabled" as defined in the Social Security Act, as amended.

In context of the five-step sequential evaluation, the ALJ found in favor of Geddling at steps 1 and 2. At step 3, the ALJ found that, based upon the medical facts alone, her impairments were severe but neither individually nor in combination did they reach the level of severity contemplated in the Listings; and her mental impairments, while limiting somewhat her activities of daily living, maintaining social functioning, and causing difficulties in maintaining concentration, persistence, or pace, were insufficient to satisfy the "C" criteria. The ALJ found in Geddling's favor at step 4 that she could not perform her past relevant work. However, at step 5, he found that she retained the RFC to perform the exertional and non-exertional requirements of work with some limitations in lifting, standing/walking, and sitting, but that she could perform simple, routine, repetitive tasks not requiring constant, close attention to detail and having occasional contact with the public; that she could tolerate brief, superficial interactions with others but would require occasional supervision and could work at no more than a regular pace, and could tolerate mild to moderate stress. Based upon the evidence of the vocational expert, the ALJ concluded that, considering Geddling's age, education, previous work experience, and RFC, jobs such as "addresser, final assembler, and touch-up screener" existed in

significant numbers in the national economy that she could perform.

## DISCUSSION

Geddling challenges the finding of the ALJ at step 5 that she retained RFC to meet the physical requirements of work.  She argues that there is not substantial evidence in the record to support this finding; that the ALJ based her finding solely on the five-page mental functional capacity assessment completed by a DDS physician on September 17, 2002.  (Ex. 19F, AR 294-8).  According to Geddling, that report is flawed for two reasons: (1) Dr. Kazmierski only provided an assessment of Geddling's mental capacity based upon her review of the records and not a personal examination, and the assessment makes no reference to her physical functional capacity.  Further, there is no indication as to what evidence, if any, the ALJ relied upon in finding that Geddling retained the RFC to meet the physical requirements of work since there is no non-psychiatric assessment in the record and none were requested by the ALJ.  (2) The RFC is based on a medical consultation review assessment completed nearly two years before the administrative hearing. The bottom line objection is that the September 17, 2002, RFC assessment of Dr. Kazmierski relied on by the ALJ was completed nine months after Geddling's onset date and nearly two years before the hearing date.  (AR298).  That assessment could not have possibly given any consideration to Geddling's physical or mental condition during the subsequent two-year period, during which she underwent sixty medical examinations for treatment of her medical complaints, including two back surgeries, gastroesophageal reflux disease (GERD), gall bladder

7

surgery, fibromyalgia and irritable bowel syndrome; and although the ALJ had access to all this medical information, he is unqualified to interpret it in deciding Geddling's RFC. Consequently, Geddling argues that the ALJ should have ordered a consultative examination by a medical doctor to determine her updated RFC based upon all of the medical information after the September 17, 2002, assessment by Dr. Kazmierski. See <u>Manso-Pizarro v. Sec'y</u>, 47 F.3d 935 (8th Cir. 1986).

In addition to challenging the evidentiary support for the ALJ's determination of her RFC, Geddling argues that the ALJ improperly dismissed her complaints of pain and fatigue in disregard of her witnesses' testimony on the issue. The ALJ's failure to include Geddling's subjective complaints in completing her RFC undermines her determination of that issue and falls short of the requirement that there be substantial evidence in the record to support the ALJ's determination of Geddling's RFC.

Contrary to Geddling's contention, the ALJ's determination of her RFC was not based entirely upon the September 17, 2002 assessment of Dr. Kazmierski. While his RFC finding was "based generally" on Dr. Kazmierski's report, the ALJ noted that she had also "considered the testimony and evidence of the record carefully" in determining that Geddling retained the "RFC to perform the mental and physical requirements of work" with certain limitations. The ALJ's consideration of the entire medical record is evident by her comprehensive summary of Geddling's medical history from her emergency room treatment for a suicide attempt in August 2001 to her last medical treatment by Dr. Usharani M. Kumar

8

on August 13, 2004, at which time Dr. Kumar found "no clinical evidence of lupus or connective tissue disease" on referral from her internal medicine doctor, Dr. Feliciano, to investigate Geddling's complaints of "severe achiness" over her entire body and possible fibromyalgia syndrome and lupus. In between these two dates, there are one hundred and one (101) medical reports in the record relating to medical treatment provided Geddling by numerous medical providers. In assessing all of this medical information, which included reports relating to her depression, panic attacks, headaches, diabetes, several surgeries, gastroesophageal reflux disease, fibromyalgia, and irritable bowel syndrome, the ALJ determined that:

> Despite allegations by the claimant of significant limitations, the record reflects that Ms. Geddling has not regularly taken medications and followed the recommendations of treatment made by providers. She has cancelled or failed to show up for doctor appointments on a number of occasions. When taking medications as directed, the evidence shows the claimant often reported doing well. The claimant has provided conflicting information to medical providers regarding family medical history and education history. The record does not contain any opinions from treating or examining physicians indicating the claimant is disabled. No restrictions were apparently placed on the claimant.

The Commissioner is under the erroneous impression that Geddling has the burden of proving her entitlement to disability benefits, and in a general sense, this is true. However, under the five-step sequential analysis, the Commissioner has the burden of proving that Geddling has the RFC to do work once the ALJ found at

step 4 that Geddling was unable to perform her past relevant work.[1] In making this determination, the ALJ could not rely upon the bare medical findings in determining her RFC. "Neither the Appeals Council nor this court is qualified to make [a] medical judgment about RFC based solely on bare medical findings as to [a] claimant's condition." Bauzo v. Bowers, 803 F.2d 917, 926 (7th Cir. 1986). Unfortunately, this is what the ALJ did in this case. In determining Geddling's RFC at the time of the hearing on August 16, 2004, he supplemented the September 17, 2002, RFC assessment of Dr. Kazmierski with his own interpretation of Geddling's capabilities as gleaned from her considerable medical history after September 17, 2002. The ALJ should have ordered a consultative examination by an appropriate medical doctor to obtain an updated assessment of Geddling's physical and mental RFC. See Bauzo v. Bowen and Manso-Pizarro v. Sec'y., Id.

The Commissioner argues that the ALJ need not rely upon a medical assessment of RFC if the testimony of the claimant herself provides substantial evidence to support the ALJ's determination of her RFC. This is true. See Diaz v. Chater, 55 F.3d 300 (7th Cir. 1995)(in determining what a claimant can do despite his limitations, the SSA must consider the entire record including all relevant medical and non-medical evidence, such as a claimant's own

---

[1] The fact that Geddling was represented at the hearing by counsel and the ALJ is entitled to assume that she "made her strongest case for benefits" does not relieve the Commissioner from its obligation to prove Geddling's RFC. Therefore, the Commissioner's argument that none of her treating physicians were asked to assess her RFC is irrelevant. Despite representation by counsel, the ALJ has a duty to develop the record. See Shannon v. Chater, 54 F.3d 484 (8th Cir. 1995).

statement of what he or she is able or unable to do.) The Commissioner argues that Geddling's own testimony as to her limitations/capabilities, support the ALJ's findings that she could perform the minimal physical demands of sedentary work.[2] In that regard, there is a large amount of congruency between her acknowledged capabilities/limitations and the ALJ's RFC findings: "she testified at the hearing that she could not stand for more than 15 minutes at a time, and that sitting was uncomfortable and she had to shift positions frequently (Tr. 468-69). She thought she could walk about a block and stand for a total of one hour per day." (Tr. 483). The ALJ found that Geddling retained the RFC to perform the exertional and non-exertional requirements of work, with the following limitations:

> occasionally lift 20 pounds and repeatedly lift ten pounds, stand/walk two hours in an eight hour day, sit six hours in an eight hour day, occasionally bend, stoop, squat, kneel, crawl, and climb. The claimant should avoid heights. She could perform simple, routine, repetitive tasks not requiring constant, close attention to detail and have occasional contact with the public. She could tolerate brief, superficial interactions with others. The claimant would require occasional supervision and could work at no more than a regular pace. She could tolerate mild to moderate stress. (20 C.F.R. 404.1545 and 416.945).

Despite the substantial congruency, Geddling did testify or admit to at least two critical aspects of her physical condition

---

[2] "Sedentary work" is defined by the regulations as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

which were ignored by the ALJ: (1) she testified that she had problems with her hands in terms of grasping and weakness, and was unable to grasp or do consistent regular motions with her hands; and (2) she testified that she could only work at a "slow pace" instead of the "regular" pace found by the ALJ. The inclusion of these two limitations in the hypothetical given the vocational expert by Geddling's attorney caused him to opine that these additional limitations would preclude Geddling from doing "sedentary unskilled jobs" and that there were no jobs in the national economy that Geddling could do.

Given the absence of any medical assessment of Geddling's capabilities and the inadequacies of Geddling's testimony in that regard, there is an absence of sufficient evidence in the record to support the ALJ's determination of Geddling's RFC.

Geddling's complaint that the ALJ dismissed her complaints of pain and fatigue and discounted her witnesses' testimony on the issue is not supported by the record. Both matters were discussed by the ALJ. The ALJ found her two witnesses, her sister and husband, to be less than disinterested and had many inconsistencies between their testimony and the medical evidence. The ALJ did not find her complaints of disabling pain and related symptoms to be fully credible by pointing out numerous inconsistencies that detracted from her complaints. For example, the ALJ noted that none of her own physicians suggested she was at all limited, let alone unable to do work as a result of her various impairments. (Tr. 23). Psychiatrists Yaratha and Aaron repeatedly indicated that, despite some waxing of symptoms, Geddling was doing well overall. (Tr. 177, 251, 256, 378, 380, 384, 385). In June 2004, Dr. Feliciano noted that she had no major complaints; in fact, she

had been exercising and Dr. Feliciano recommended that she continue (Tr. 408). The ALJ reasonably concluded that the absence of any physician opinion in support of her claim undermined her allegations of disabling pain and depression. See 20 C.F.R. §§ 40.1529(c)(2), 416.929(c)(2) (ALJ considers physician opinions and objective medical evidence in evaluating capability). Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). Geddling disagrees with the ALJ's credibility findings but there is no showing in the record that the ALJ's credibility determination is "patently wrong." Schmidt v. Barnhart, 395 F.3d 737, 747 (7th Cir. 2005).

The ALJ acknowledged that Ms. Geddling used large amounts of narcotic medication and frequently visited the emergency room seeking injections of Demerol, Vistaril, and Morphine (Tr. 22-23). And while this type of treatment might ordinarily support a claimant's allegation of pain, in Geddling's case her history of drug-seeking behavior cast doubt upon the veracity of her compalints (Tr. 23). The ALJ further observed that, when Geddling followed appropriate treatment, her condition improved. (Tr. 23). For example, when she dieted, exercised, and limited her use of narcotic medication, her conditions were controlled and she had no major complaints. (Tr. 408). But the record showed that Geddling repeatedly refused to follow her physician's instructions regarding the use of medication, and that she otherwise did not pursue recommended treatment options. Indeed, following her 2002 back surgery, Geddling failed to attend physical therapy as instructed by Dr. Ridenour (Tr. 206); she did not return for the epidural injection recommended by Dr. Swanson; and she adamantly refused injections (Tr. 309). Geddling also failed to follow through with the spinal cord stimulator recommended by Dr. Wilson (Tr. 336,

13

337).  When Dr. Qadir recommended that she lose weight, she declined the help of a dietician (Tr. 354).  When Dr. Qadir instructed her to stop using Vicodin (Tr. 354), she nonetheless requested this medication from Dr. Feliciano the very same month (Tr. 422-23).  And when Dr. Feliciano repeatedly referred her to a pain clinic, she repeatedly refused (Tr. 416, 418).  The ALJ reasonably concluded that Geddling's steadfast refusal to pursue recommended treatment options detracted from her allegation of disabling pain.  See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)-(v) (ALJ considers claimant's treatment history in evaluating credibility).

**CONCLUSION**

For all of the above reasons, the Court finds that the record is such that summary judgment cannot be granted either side. Accordingly, Plaintiff's motion for summary reversal [Doc. #15] and Defendant's motion for summary affirmance [Doc. #19] are denied. This case is remanded to the Commissioner for an updated medical determination of Geddling's RFC and further proceedings consistent with this Order.

Entered this   18th   of January, 2007.


                                              s/Joe Billy McDade
                                            JOE BILLY McDADE
                                       United States District Judge